## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| |
|---|
| JOEL ARNOLDO PENA, individually and on behalf of all other persons similarly situated who were employed by DISCOVER CONSTRUCTION, LLC and/or any other entities affiliated with, controlling, or controlled by DISCOVER CONSTRUCTION, LLC, and JOHNNY SALVADOR, Individually, |
| Plaintiffs, |
| vs. |
| DISCOVER CONSTRUCTION, LLC and/or any other entities affiliated with, controlling, or controlled by DISCOVER CONSTRUCTION, LLC, and JOHNNY SALVADOR, Individually, |
| Defendants. |

**Dkt.No.:** 3:21-cv-18462

### MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Jaffe Glenn Law Group, P.A.
Andrew Glenn, Esq.
aglenn@jaffeglenn.com
Jodi Jaffe, Esq.
jjaffe@jaffeglenn.com
300 Carnegie Center, Suite 150
Princeton, NJ 08540
*Attorneys for Plaintiffs and Putative Class*

Hall, Booth, Smith, P.C.
Jeffrey Daitz, Esq.
jdaitz@hallboothsmith.com
Jacqueline Voronov, Esq.
jvoronov@hallboothsmith.com

15 East Midland Ave., Suite 3A
Paramus, NJ 07652
*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND .................................... 1

        Procedural History ............................................................................... 1

        Nature Of Plaintiffs' Claims ................................................................ 2

        Settlement Negotiations ....................................................................... 3

II.   SUMMARY OF THE SETTLEMENT TERMS ......................................... 3

III.  THIS COURT SHOULD CERTIFY THIS ACTION AS A CLASS AND COLLECTIVE ACTION PURSUANT TO RULE 23 AND 29 U.S.C. § 216(b) FOR SETTLEMENT PURPOSES ONLY ........................................................................................ 8

        A.    Rule 23 Elements Are to Be Liberally Construed .................... 8

                1.    The Class Is So Numerous That Joinder of All Members Is Impracticable ......................................................... 9

                2.    The Claims of Each Member of The Putative Class Arise From An Alleged Common Wrong .............................. 10

                3.    Predominance ............................................................. 12

                4.    The Named Plaintiffs Claims Are Typical of The Claims of The Putative Class ........................................ 13

                5.    The Named Plaintiff Will Fairly and Adequately Protect the Interests of The Class ................................. 14

                6.    A Class Action Is Superior to Other Available Methods ......................... 15

        B.    The FLSA Collective Should be Certified for Settlement Purposes ..................... 16

        C.    Applicable Case Law Supports the Conclusion That This Class and Collective Action Should Be Certified for Settlement Purposes Only ...................................... 17

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................. 19

        A.    The Settlement Is Non-Collusive, Fair, Reasonable, And Adequate .................... 21

1. Litigation Through Trial Would Be Complex, Costly, And Long (Girsh Factor 1) ...................................................................................... 22

2. The Reaction of The Class Has Been Positive (Girsh Factor 2) .......................22

3. Discovery Has Advanced Far Enough to Allow The Parties To Resolve The Case Responsibly (Girsh Factor 3) ...................................................................23

4. Plaintiffs Would Face Real Risks if the Case Proceeded (Girsh Factors 4 And 5) ..........................................................................................................23

5. Risks Involved in Maintaining The Class Through Trial (Girsh Factor 6) .......24

6. Defendants' Ability to Withstand A Greater Judgment Is Not Determinative (Girsh Factor 7) ............................................................................................24

7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Girsh Factors 8 And 9) ......24

V. APPROVAL OF THE NOTICE AND CLAIM FORM IS APPROPRIATE

VI. THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE .............26

VI. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ...................................27

CONCLUSION ....................................................................................................28

## TABLE OF AUTHORITIES

CASES                                                                                PAGE

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)……………………………………………………………...16

*Barnes v. American Tobacco Co.,*
161 F.3d 127 (3d Cir. 1998) ........................................................................14

*Barone v. Safway Steel Prods., Inc.,*
2005 U.S. Dist. LEXIS 17645 (E.D.N.Y. 2005) ....................................18

*Bernhard v. TD Bank, NA.,*
2009U.S. Dist. LEXIS 92308 (D.N.J. 2009)…………………………………...11, 19

*Bizzarro v. Ocean County,*
2009 U.S. Dist. LEXIS 48354 (D.N.J. 2009) ....................................10

*Bredbenner v. Liberty Travel, Inc.,*
2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011)……………………………….……passim

*Brooklyn Sav. Bank v. 0 'Neil,* 324 U.S. 697 (1945)……………………………………….2

*Brzychnalski v. Unesco, Inc.,*
35 F. Supp. 2d 351 (S.D.N.Y. 1999) ....................................................18

*Bulba v. Tunstall Holdings, LLC, et.al.,*
E.D.N.Y., May 26,2015 ........................................................................15

*Cabrera v. Penn-Del Baking Distributors, Inc.,* et.al.,
N.J., May 26, 2015 ........................................................................15

*Cirillo v. Patriot Electric Corp.,*
E.D.N.Y., May 17, 2016 ........................................................................15

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)........................................................................20

*Clarke* v. *Flik International Corp.,*
2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020) ........................................21

*Colon v. Passaic County,*
2009 U.S. Dist. LEXIS 45151 (D.N.J. 2009) ....................................11

*Cruz v. Majestic Cleaning,*
Index No. 511791/2017 (NYSCEF, Kings County)........................................15

*Davis, et al. v. Essex County,*
14-cv-01122 (CCC)(JNC) (N.J. December 1, 2015)…………………………………..15

*Deangelis v. Bally's Park Place, Inc.,*
298 F.R.D. 188 (D.N.J. 2014) ....................................................................... ..18

*Dorn v. Eddington Sec., Inc.,*
2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ......................................................22

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir.2010) .........................................................................19, 21

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985) ....................................................................... ..10

*Epstein v. Moore,*
1988 U.S. Dist. LEXIS 5450 (D.N.J. 1988) ......................................................11

*Friscia v. Doherty Enterprises, Inc., d/b/a Panera Bread Company,*
D.N.J. Jun. 26, 2018 ...................................................................................15

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir.1975)……………………………………………………...passim

*Goldberger v. Integrated Resources, Inc.,*
209 F.3d 43 (2d Cir. 2000) ........................................................................... 20

*Goldman v. Radioshack Corp.,*
2005 U.S. Dist. LEXIS 8742 (E.D. Pa. 2005) ....................................................18

*Gortat v. Capala Brothers, Inc.,*
2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. 2010) ................................................. 18

*Grenawalt v. AT&T Mobility, LLC,*
2014 U.S. Dist. LEXIS 139179 (S.D.N.Y. 2014) ............................................... 18

*Hall v. Best Buy Co.,*
274 F.R.D. 154 (E.D. Pa. 2011) ...................................................................17

*Hebert, et.al. v. Atlantic County,*
N.J., December 7, 2015 .............................................................................. 15

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
213 F.3d 124 (3d Cir. 2000) ........................................................................ 13

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
239 F.R.D. 363 (S.D.N.Y. 2007)…………………………………………..……..13

*In re "Agent Orange" Prod. Liab. Litig.,*
818 F.2d 145, 166 (2d Cir. 1987)…………………………………………...……11

*In re Baby Products Antitrust Litig.,*
708 F.3d 163 (3d Cir. 2013) ...................................................................... 19, 25

*In re Bulk [extruded} Graphite Prods. Antitrust Litig.,*
2006 U.S. Dist. LEXIS 16619 (D.N.J. 2006)...............................…….10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995) ...................................................... …19

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305 (3d Cir. 2008).................................................... 9, 13

*In re Lucent Technologies, Inc., Sec. Litig.,*
307 F. Supp. 2d 633 (D.N.J. 2004)................................................ 19

*In re Mercedes-Benz Antitrust Litig.,*
213 F.R.D. 180 (D.N.J. 2003) .....................................................10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998)................................................... 19, 25

*In re Schering Plough Corp. ERISA Litig.,*
589 F.3d 585 (3d Cir. 2009) .................................................. …..14

*In re School Asbestos Litigation,*
789 F.2d 996 (3d Cir. 1986) .................................................. …..11

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004) ............................................. 11, 19, 22

*Jones v. SCO, Silver Care Operations LLC,*
2014 U.S. Dist. LEXIS 151089 (D.N.J. 2014) ................................... 9

*Knepper v. Rite Aid Corp.,*
675 F.3d 249 (3d Cir. 2012)...................................................... 9

*Larson v. Sprint Nextel Corp.,*
2009 WL 1228443 (D.N.J. Apr. 30, 2009)......................................27

*Lenahan v. Sears, Roebuck & Co.,*
2006 WL 2085282 (D.N.J. July 24, 2006)
*aff'd,* 266 F. App'x 114 (3d Cir. 2008)..............................................................................24

*Lusardi v. Lechner,*
855 F .2d 1062 (3d Cir. 1988),,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,, .......... ..17

*Lusardi v. Xerox Corp.,*
118 F.R.D. 351 (D.N.J. 1987)……………………………………………......17

*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982)……………………………………………2, 20, 21

*Martina v. L.A. Fitness Int'!, Inc.,*
2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013)....................................................19

*Mazon v. Wells Fargo Bank, NA*
2011 WL 6257149 (D.N.J. Dec. 14, 2011).............................................………19, 25

*McGee v. Ann's Choice, Inc.,*
014 U.S. Dist. LEXIS 75840 ........................................................................ …2

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ......................................................................................….25

*Neal v. Casey,* 43 F.3d 48 (3d Cir. 1994)..................................................…..11

*Opperman v. Allstate NJ  Ins. Co.,*
2009 U.S. Dist. LEXIS 111733 (D.N.J. 2009) ...................................................10

*Osgoodv. Harrah's Entm't, Inc.,*
202 F.R.D. 115 (D.N.J. 2001) .........................................................................10

*Perez v. Ames Goldsmith*
MID-L-005291-17 (NJ Super. Law Div. 2018).................................................15

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985) ........................................................................................16

*Rodriguez v. Parade Management Corp, et al.,*
19-cv-00223 (ES)(SCM)(D.NJ December 7, 2020)........................................15

*Scales v.We R Wireless, Inc., et.al.,*
N.J., Nove1nber 2, 2016...............................................................................15

*Schwartz v. Avis Rent a Car Sys., LLC,*
2014 U.S. Dist. LEXIS 121322 (D.N.J. 2014) ................................................... 13

*Singleton v. First Student Mgmt. LLC,*
2014 U.S. Dist. LEXIS 108427 (D.N.J. 2014) ................................... …...13, 18, 24

*Siyam v. SS&C Techs. Inc.,*
N.J. Super. Ct. Law Div. Monmouth Cty ............................................................ .15

*Smith v. Prof! Billing & Mgmt. Servs.,*
2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007) ....................................... .19

*Stewart v. Abraham,*
275 F,3d 220 (3d Cir. 2001) ............................................  ……...11

*Sullivan v. DB lnvs., Inc.,*
667 F.3d 273 (3d Cir. 2011) ............................................................…...10

*Varacallo,v.* Mass. Mut. Life Ins. Co.
226 F.R.D 207 (2009) ......................................................................... 27

*Velez v. Majik Cleaning Service, Inc.,*
2005 WL 106895 (S.D.N.Y. 2005) ................................................................ 18

*Weber v. Gov't Employees Ins. Co.,*
262 F.R.D. 431 (D.N.J. 2009) ................................................................ 22, 24

*Weikel v. Tower Semiconductor, Ltd.,*
183 F.R.D. 377 (D.N.J. 1998) ................................................................ …...10

*Wetzel v. Liberty Mut. Ins. Co.,*
508 F.2d 239 (3d Cir. 1975) ................................................................ .15

## RULES

Fed. R. Civ. P. 12(b) ..............................................................................10

Fed. R. Civ. P. 23 .......................................................................... passim

Fed. R. Civ. Pro. 23(a) .............................................................…….passim

Fed. R. Civ. Pro. 23(a)(l) ................................................................9

Fed. R. Civ. Pro. 23(a)(2)..............................................................................9

Fed. R. Civ. Pro. 23(a)(3)..............................................................................9

Fed. R. Civ. Pro. 23(a)(4) ..........................................................................9, 15

Fed. R. Civ. Pro. 23(b) ................................................................................ 9

Fed. R. Civ. Pro. 23(b)(3)……………………………………………………10,16

Fed. R. Civ. P. 23(c)(2)(B)……………………………………………………27

Fed. R. Civ. P. 23(e) ..............................................................................25

Fed. R. Civ. P. 23(h)……………………………………………………………8, 28

Fed. R. Civ. 54(d)(2)……………………………………………………………..8

Fed. R. Civ. P. 56 ..............................................................................10

## STATUTES

28 U.S.C. 1715(d)……………………………………………………………...28

29 U.S.C. § 216(b)………………………………………………......passim

N.J.S.A. § 34:11-56.25………………………………………………………...2

N N.J.S.A. § 34:11-56a………………………………………………………...2

## TREATISES

NEWBERG § 11.22, *et seq.* (4th ed. 2002)……………………………………18

NEWBERG § 11.25………………………………………………………………20

NEWBERG § 11.26………………………………………………………………20

NEWBERG§ 11.41………………………………………………………………19

## INTRODUCTION

Plaintiff, JOEL ARNOLDO PENA ("Named Plaintiff" or "Plaintiff"), on behalf of himself and all Opt-In Plaintiffs who join this ("Potential Opt-In Plaintiffs") (collectively "Plaintiffs") and Defendants, DISCOVER CONSTRUCTION, LLC and/or any other entities affiliated with, controlling, or controlled by DISCOVER CONSTRUCTION, LLC, OMEGA CONSTRUCTION, LLC, OMEGA GROUP, LLC, OMEGA ROAD BUILDERS, LLC, and JOHNNY SALVADOR,

Individually and in his official capacity (hereinafter collectively referred to as "Omega" or "Defendants") (together with Plaintiffs, referred to as the "Parties"), submit this Memorandum in support of their Joint Motion for Preliminary Approval of their Class and Collective Action Settlement, including the form and manner of disseminating the Settlement Notice, the Preliminary Approval of the Stipulation and Settlement and Release, Notice of Class and Collective Action Settlement and Release, as well as the request for the scheduling of a Final Settlement Fairness Hearing.

The Parties, following a Mediation before an experienced mediator, Martin Scheinman, have reached a settlement in the maximum amount of One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00), subject to the approval of this Court. The terms of the settlement are set forth in the Parties' Stipulation and Settlement and Release Agreement ("Settlement Agreement"), which is attached hereto. The Settlement Agreement was the product of arm's length negotiations by counsel experienced in collective Fair Labor Standards Act ("FLSA") and Class Action litigation.

If approved by the Court, Plaintiff and Opt-In Plaintiffs who join this action will have the opportunity to receive substantial monetary compensation, if they worked as concrete laborers, yard workers, drivers and mechanics, both union and non-union (hereinafter "laborers") in New Jersey at any time between October 12, 2015, and October 12, 2022. The Settlement eliminates the risks both sides would bear if this litigation continued. The Parties believe the terms of the Settlement Agreement are fair and reasonable and should receive final approval at a fairness hearing following the provision of Notice

1

of this lawsuit to all Opt-In Plaintiffs.

Court approval of this Class and Collective Class Action settlement is necessary to effectuate a valid and enforceable release of Plaintiff's and Opt-In Plaintiffs' FLSA and state law claims. *McGee v. Ann's Choice, Inc.,* 2014 U.S. Dist. LEXIS 75840, at *4-5 (E.D. Pa. June 4, 2014) (citing *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982)). Where, as here, the litigation arises from a private enforcement action under the FLSA, 29 U.S.C. § 216(b), as well as state wage and hour causes of actions, the Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," and, if a settlement reflects "a reasonable compromise," the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores,* 679 F.2d at 1352-54 (citing *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697 (1945)).

Because the Settlement in the instant case clearly meets the applicable legal standards, the Parties respectfully request this Court's approval to send notice of this FLSA settlement to Plaintiff and the putative Opt-In Plaintiffs (collectively "Potential Opt-In Plaintiffs") and schedule a Settlement Fairness Hearing following the notice period.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff, on behalf of himself and those workers similarly situated, filed this action on October 12, 2021, for unpaid overtime wages and unpaid prevailing wages, both regular and overtime compensation, on or about October 12, 2021 [DE-1]. The Complaint alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), the New Jersey labor laws governing unpaid wages and overtime ("NJWHL"), N.J.S.A. §34:11-56a, et. seq., and the New Jersey Prevailing Wage Act ("NJPWA"), N.J.S.A. §34:11-56.25, et. seq., which governs the payment of certain construction laborers while working on New Jersey State or local government jobs [DE-1]. Plaintiffs claim that Defendants violated the FLSA and the NJWHL because Defendants failed to compensate

2

Plaintiffs at their regular rate of pay and at one and one half times their regular rates of pay for all work performed in excess of forty (40) hours in a work week and further that, in violation of the NJPWA, Defendants failed to compensate Plaintiffs for all hours worked at the correct prevailing wage plus supplemental benefit rate of pay for all of their work performed on public, government jobs.

More specifically, Plaintiff alleged being compensated only straight time pay, as opposed to time and one half his straight time pay, for the hours he worked, regardless of whether Plaintiff worked more than forty hours in a work week. Plaintiff also alleged that he worked more overtime hours than that for which he was paid. Plaintiff also alleged that he did not receive his regular rate of pay for hours worked. The above detailed allegations are in violation of both the FLSA and the NJWHL. Finally, Plaintiff alleged not being compensated at the prevailing wage plus supplemental benefit rate of pay for all hours worked on state and local government jobs, including not being paid at time and a half his prevailing wage rate of pay for those hours worked in excess of forty (40) hours in a workweek in violation of New Jersey's Prevailing Wage Act. *Id.*

Stipulations for extension of time to file a responsive pleading were agreed to by counsel for Plaintiff and ultimately on February 22, 2022, Defendants filed their Answer. However, prior to filing their Answer, the parties had already discussed the potential for settlement. To that end, counsel for Defendants were to provide documents that were needed to evaluate the liability and damages in this matter. On February 21, 2022, counsel for Defendants shared records for the Named Plaintiff only and neglected to send payroll records, as well as a list of the prevailing wage jobs that Mr. Pena worked at during his tenure with Defendants. On March 11, 2022, counsel for Defendants provided Plaintiff's payroll records as well as a list of the prevailing wage jobs Plaintiff worked on, as requested. On or about March 18, 2022, as Plaintiff was uncertain that the records provided by Defendants were complete, the parties were forced to engage in full blown formal discovery.

On May 4, 2022, counsel for Plaintiff inquired whether Defendants would consent to Conditional

Certification of a Collective Class. Defendants summarily answered they would not Shortly thereafter, on June 9, 2022, counsel for Plaintiffs filed their Motion for Conditional Certification. The Motion was fully briefed; Defendants filed their Opposition to the Motion, and Plaintiffs filed their Reply.

On July 29, 2022, Plaintiffs propounded discovery requests on Defendants. Counsel for Defendants requested extensions to provide discovery responses, which were consented to by counsel for Plaintiffs. During this time, The Honorable Judge Singh was in the process of scheduling a Settlement Conference. In light of the parties' desire to attempt to resolve this matter, the Honorable Judge Wolfson issued a Text Order temporarily terminating Plaintiffs' Motion to Certify A Class pending the parties' settlement conference. On September 13, 2022, Defendants provided responses to Interrogatories as well as voluminous documents responsive to Plaintiff's Request to Produce Documents. During the fall of 2022, Defendants produced approximately 1000 pages of documents, as well as written responses to Plaintiff's discovery requests. Further, the parties engaged in several good faith efforts to resolve discovery deficiencies. On December 14, 2022, this Honorable Court stayed discovery and administratively terminated this matter, providing the parties an opportunity to further exchange documents as well as to attend mediation to attempt to resolve this matter.

Through the tenure of this matter, counsel for Plaintiffs was successful in speaking with several employees of Defendants and conducting further investigations. Additionally, counsel for Plaintiffs was successful in conducting and receiving voluminous documents from OPRA requests which enabled Plaintiffs to further investigate the reliability of Defendants' responses to discovery. Counsel then endeavored to attempt to schedule this matter before a private mediator. Unfortunately, after rescheduling the mediation twice upon request by Defendants, the present counsel was substituted by current counsel for Defendants.

Upon entry of current counsel for Defendants, approximately 6000 additional pages of records were produced. Counsel for Plaintiffs reconciled payroll records, handwritten time records, handwritten

checks, certified weekly payroll documents, and other miscellaneous documents.

Eventually, on June 15, 2023, the parties attended mediation with Martin Scheinman, at which time, after an approximate ten (10) hour mediation, they resolved this matter in its entirety. After the mediation, the parties encountered a dispute with respect to the settlement terms. After appearing before the Honorable Judge Singh on September 14, 2023, and with the Court's assistance, this dispute was successfully resolved.

Of note, the settlement encapsulated not only the putative class of concrete laborers, both Union and non-Union that worked for Defendants for a three-year statute of limitations, but rather the parties agreed upon a resolution using a 6-year statute of limitations. Further, the Class was expanded to include, not only Defendants' concrete laborers, but also Defendants' yard workers, drivers and mechanics. This is so despite the Parties' continued differences as to the nature and value of the asserted claims. Plaintiffs, on the one hand, believe that the claims asserted in this action are not only meritorious, but Defendants failed to properly compensate them for all of their hours worked, all their overtime hours worked, and for their public jobs worked and their entitlement to prevailing wage compensation. Further, Plaintiffs believe that if litigation were to continue, they would be able to demonstrate at a trial that Defendants acted "willfully" and that their conduct was not in "good faith". This is based upon Plaintiffs' opinion regarding the strength of their claims as well as other relevant information and documents. Defendants, on the other hand, strongly dispute the validity of the nature and extent of the claims asserted by Plaintiffs and maintain that they, at all times, properly compensated Plaintiffs for all hours worked on both public and private jobs. Defendants also maintain that assuming arguendo that they did not pay Plaintiffs properly at all times, they acted in good faith and did not act willfully in their failure, if at all, to compensate Plaintiffs properly. Further, Defendants posited that the damages calculations set forth by Plaintiffs prior to the mediation were too high, and that even if Plaintiffs were legally correct that any compensation was due, in

Defendants' view, the actual amount of damages is far lower than what Plaintiffs had claimed. In contrast with Plaintiffs, Defendants believe that should the matter proceed to trial, Defendants would prevail, or at the very least, only be liable for a small fraction of the monies claimed by Plaintiffs.

Given the Parties' varying positions regarding their respective claims and defenses, they recognize that these disputed issues could be the subject of continued extensive litigation. The Parties have engaged in complex settlement discussions, including a lengthy mediation with Martin Scheinman, during which they discussed and evaluated the various claims and defenses and gained an understanding of the strengths and risks associated with their respective positions. There can be no question, therefore, that the proposed Settlement is the product of vigorous litigation and arm's length negotiations.

## II.  SUMMARY OF THE SETTLEMENT  TERMS AND PROCEDURE

While maintaining its general denial of Plaintiffs' claims, Defendants have agreed to a Gross Settlement Fund in the maximum amount of One Million Two Hundred Thousand Dollars and Zero Cents ($1,200,000.00).  Defendants shall deposit Five Hundred Thousand Dollars and Zero Cents ($500,000.00) into an escrow account held by a third-party clam settlement administrator, SSI Settlement Services, Inc. ("SSI") within 30 days from receipt of the Preliminary Approval.  In the event that eligible claims are submitted in excess of $500,000.00. Defendants shall deposit $500,000.00 every 30 days thereafter into the escrow account, not to exceed $775,000.00.  Separate and apart from the limit on these funds are the expenses that bring the total amount due to $1,200,000.00. as set forth below, after subtracting the costs of administering the Settlement with SSI (up to $25,000.00), $400,000.00 in attorneys' fees, and $975.00 in expenses for Plaintiffs' Counsel. After deducting the above amounts from the $1,200,000.00, as well as the payments as follows:

Plaintiff Joel Pena shall receive a $15,000.00 service award, as well as damages amount of $45,000.00. Plaintiff Miguel Torres shall receive $15,000.00, inclusive of a service award. Finally, Plaintiff Gomes Maximiano is to receive $45,000.00, inclusive of a service award, the amount available

to the Class Members is Six Hundred Fifty-Five Thousand Dollars and Zero Cents ($655,000.00). The

remaining settlement funds, or the Qualified Settlement Fund, will be allocated as set forth in Section

II.B of the Settlement Agreement.

Generally, each of the Plaintiffs and Potential Opt-In Plaintiffs shall be compensated a

proportionate share of the Qualified Settlement Fund, which is assigned to each Qualified Class

Member, and shall be paid pursuant to the following allocation formula:

> Plaintiffs and each "Class Member" that worked for Omega between October 12,
> 2015, and October 12, 2022, shall be compensated based upon their proportional
> share of weeks worked.  The rate of pay used for the damages calculations will
> be $277.00 per week for each week of the Class Members' employment with
> Defendants during the above time period.  The total amount of funds available to
> the Class Members, save those funds already assigned to Joel Pena, Miguel
> Torres, and Gomes Maximiano is $655,000.00.  Therefore, the allocation of
> damages to each Class Member shall be the number of weeks that they worked
> multiplied by the weekly damage amount as explained above.

The proposed Notice of Lawsuit, which includes an Opt-In Claim Form ("Notice Packet"),

attached hereto as Exhibit A, shall be published by first-class mail to each Class Member and, in part,

shall inform him/her of: the Settlement; the claims he/she is releasing by not opting out of the

settlement; the procedure to object to the proposed settlement, and the formula that will be used to

calculate the payments to Class Members under the Settlement.  The proposed Notice Packet will

explain that the eventual Participating Class Member's Final Settlement Payment will be a proportionate

share of the Qualified Settlement Fund, as determined by the Claims Administrator pursuant to a

formula and based on a number of factors, as described above.

No later than fourteen (14) calendar days after the Preliminary Approval Date, the Claims

Administrator shall send the Notice Packet and a postage-paid pre-addressed return envelope (which

the Class Member may use to return to the Claims Administrator, by first-class mail, their Opt-In Claim

Form to each Class Member that has been identified.  Class Members will have sixty (60) days to return an

Opt-In Claim Form, and thirty (30) days to request exclusion from the settlement, or object to the

settlement. If a Class Member's Notice Packet is returned without a forwarding address, the Claims Administrator shall attempt to determine the Class Member's current address, performing a skip trace. If a new address is obtained, the Claims Administrator shall promptly re-mail the Notice Packet to the Class Member. The Claims Administrator shall also attempt to locate addresses of Class Members whose Notice Packets are returned as undeliverable without a forwarding address by using available address databases and also by performing a skip trace. Any Class Member whose Notice Packet is re-mailed shall have the remainder of the thirty (30) calendar days in the Claim Period.

At the Final Approval Hearing, Class Counsel will petition the Court for an award of Attorneys' Fees not to exceed Four Hundred Thousand Dollars ($400,000.00), litigation costs in the amount of Nine Hundred Seventy-Five Dollars ($975.00), plus Claims Administrator Fees and Costs not to exceed Twenty-Five Thousand Dollars ($25,000.00). Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiffs will apply for Service Payments for Class Representatives Joel Pena, Miguel Torres, and Gomes Maximiano each in the amount of $15,000.00, $5,000.00, and $5,000.00. respectively.

If the Court approves the Settlement, potential Opt-In-Plaintiffs who returned their completed Opt-In Claim Form will begin receiving their checks within fourteen (14) days after the Court enters an Order of Final Approval, on a rolling basis as the settlement is funded by Defendants if additional funds are needed.

### III. THIS COURT SHOULD CERTIFY THIS ACTION AS A CLASS AND COLLECTIVE ACTION PURSUANT TO RULE 23 AND 29 U.S.C. § 216(b) FOR SETTLEMENT PURPOSES ONLY

Plaintiffs respectfully request that this Court certify this action as a class action for settlement purposes only. Pursuant to Rule 23 of the Federal Rules of Civil Procedure to cover Plaintiffs' New Jersey State Wage and Hour Law claims and certify a Collective Action to cover Plaintiffs' FLSA

claims.  The Third Circuit has recognized the dual nature of these claims and has granted bifurcated

certification of state law claims under Rule 23, while certifying the FLSA component of the class claims

pursuant to 29 U.S.C. § 216(b).  *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 261 (3d Cir. 2012)

("Jurisdiction over opt-out class action based on state-law claims paralleling the FLSA was not

inherently incompatible with the FLSA's opt-in procedure."); *see also Jones v. SCO, Silver Care

Operations LLC*, 2014 U.S. Dist. LEXIS 151089, at *2 n.1 (D.N.J. 2014).  As demonstrated below, class

certification for settlement purposes only should be granted because Plaintiffs clearly meet the elements

of Rule 23.  Because the Rule 23 factors are satisfied, certification of the FLSA collective is also

warranted.

### A.    Rule 23 Elements Are To Be Liberally Construed

To obtain class action certification, Plaintiffs must establish that all four requisites of Rule 23(a)

and at least one part of Rule 23(b) are met.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309

(3d Cir. 2008).  Rule 23 provides that one or more members of a class may sue as representative parties

on behalf of a class if:

a.    the class is so numerous that joinder of all members is impracticable ["numerosity"], *see* Fed. R. Civ. Pro. 23(a)(1);

b.    there are questions of law or fact common to the class ["commonality"], *see* Fed. R. Civ. Pro. 23(a)(2);

c.    the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], *see* Fed. R. Civ. Pro. 23(a)(3);

d.    the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"], *see* Fed. R. Civ. Pro. 23(a)(4); and

e.    the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:

(i) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(iii) the desirability or undesirability of concentrating the litigation of the claims

in a particular forum;
(iv) the difficulties likely to be encountered in the management of a class action ["superiority"], *see* Fed. R. Civ. Pro. 23(b)(3).

Courts within the Third Circuit have been instructed to construe Rule 23 liberally.  *Opperman v. Allstate N.J. Ins. Co.*, 2009 U.S. Dist. LEXIS 111733, at *9 (D.N.J. 2009) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)).  When "considering whether certification is proper, courts refrain from inquiring into the merits of the action and accept the substantive allegations in the complaint as true." *Bizzarro v. Ocean County*, 2009 U.S. Dist. LEXIS 48354, at *25 (D.N.J. 2009); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011) ("[T]he legal viability of asserted claims is properly considered through a motion to dismiss under Rule 12(b) or summary judgment pursuant to Rule 56, not as part of a Rule 23 certification process.").  Although courts may assess the substantive merits of a party's claim if it overlaps with the elements for class certification, "[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing class certification. *Id*. (citing *Eisenberg*, at 785).

### 1.    The Class is so Numerous that Joinder of All Members is Impracticable

Rule 23(a) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Osgood v. Harrah's Entm't, Inc*., 202 F.R.D. 115, 122 (D.N.J. 2001); *Weikel v. Tower Semiconductor, Ltd*., 183 F.R.D. 377, 382 (D.N.J. 1998).  The purpose of the numerosity requirement is to "limit the class action device to those cases in which the number of parties makes traditional joinder of parties unworkable." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 184 (D.N.J. 2003).  Further, there is no requirement that the exact number of class members be immediately known, and the court "may accept common sense assumptions in finding that numerosity has been met." *In re Bulk [extruded] Graphite Prods. Antitrust Litig*., 2006 U.S. Dist. LEXIS 16619, at *14 (D.N.J. 2006) (quotations and citations omitted).

The Third Circuit has held that "[n]o minimum number of plaintiffs is required to maintain a suit

as a class action, but generally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40" then the numerosity requirement is met.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Epstein v. Moore*, 1988 U.S. Dist. LEXIS 5450, at *4 (D.N.J. 1988) (recognizing that "a proposed class of between at least 30 to 40 members will suffice to meet the numerosity requirement."); *see also Colon v. Passaic County*, 2009 U.S. Dist. LEXIS 45151, at *8 (D.N.J. 2009) (citing *Stewart*).

Numerosity is present in the instant action.  A review of Defendant's payroll records reveals that there are approximately 54 putative class members.  As a result, the putative class is sufficiently large that joinder of all members is impracticable and undesirable.  Accordingly, the numerosity requirement has been met.

### 2.  Commonality --The Claims of Each Member of the Putative Class Arise From an Alleged Common Wrong

The second requirement is that common questions of law or fact predominate over any questions affecting individual members.  The commonality requirement is satisfied "if the Named Plaintiff shares at least one question of fact or law with the grievances of the prospective class."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166 (2d Cir. 1987); *see also Bernhard v. TD Bank, N.A.*, 2009 U.S. Dist. LEXIS 92308, at *10 (D.N.J. 2009).  The burden to meet the commonality requirement is "low" and "easily met in most cases because all that is required is one common issue." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, at *17 (D.N.J. 2011) (citing *Neal*, 43 F.3d at 56); *In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir. 1986) ("the threshold of commonality is not high").

In the present action, the claims of the Named Plaintiff and members of the putative class, arise from the same alleged wrongful conduct: Defendants' purported failure to pay overtime compensation for hours worked over forty (40) in a week and/or for improper payment of the correct rate required for

the prevailing wage on public jobs.

The questions of law and fact common to all members of the putative class that predominate over questions affecting only individual class members include:

Common Factual Questions:

a. Whether Defendants maintained a policy and practice of paying its employees at the proper overtime rate for all hours worked in excess of forty (40) in a workweek; and

b. Whether Defendants paid Plaintiffs at the proper prevailing wage rate for all hours worked on public jobs.

Common Legal Questions:

a. Whether Defendants complied with the New Jersey State Wage and Hour Law pertaining to overtime compensation;

b. Whether Defendant complied with the New Jersey Prevailing Act pertaining to the payment of prevailing wages and supplemental benefits for work performed on public jobs.

The commonality of these issues is evident. Each of these core issues involve the existence of a common nucleus of operative facts and the evidence required to prove these issues will be the same for all class members. Indeed, the questions of law and fact concerning Defendants' liability to all class members, such as whether class members were paid overtime compensation for all hours worked over forty (40) each week, and whether all class members were paid at the proper prevailing wage rate for all work performed on publicly funded jobs, are not merely common questions but are *identical* questions. The harms which the Named Plaintiff has allegedly suffered in this case are identical to the harms allegedly suffered by each and every member of the class – namely that they were allegedly all not paid as required by the applicable statutes. As such, Plaintiffs have satisfied the commonality pre- requisites of Rule 23.

### 3.    Predominance

Predominance is satisfied when "the issues common to the class predominate over individual issues . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311.  Here, all of the class members allegedly suffered from Defendants' systematic failure to pay overtime compensation for all hours worked, as well as Defendants' failure to pay prevailing wages at the proper rate of pay for all hours worked.  The issue of whether class members were supposed to be paid overtime for working more than 40 hours in a week is "about the most perfect question for class treatment."  *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *24 (quoting *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *see also Singleton v. First Student Mgmt. LLC*, 2014 U.S. Dist. LEXIS 108427, at*13 (D.N.J. 2014) (predominance found in wage action where class members were subject to the same time-keeping policies and were in turn not properly compensated).  This analysis applies to prevailing wage rate violations as well.  In addition, where common issues which determine liability predominate, calculating damages on an individual basis does not prevent an otherwise valid certification. *Schwartz v. Avis Rent a Car Sys., LLC*, 2014 U.S. Dist. LEXIS 121322, at *22 (D.N.J. 2014) (citing *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000)).

In the present case, Plaintiffs allege that Defendants are statutorily liable for failing to pay Named Plaintiff and other members of the putative class overtime compensation for hours worked over 40 in a work week, as well as Defendants' failure to pay Plaintiff and the class at the proper prevailing wage rate for all hours worked on publicly funded jobs.  Defendants' purported practice of failing to pay these required wages had an allegedly common impact on all class members and common impact on the liability of Defendants.  These common issues clearly constitute a predominant aspect of the claims that the Plaintiffs and putative class would have to prove.

### 4.    The Named Plaintiff's Claims Are Typical of the Claims of the Putative Class

Rule 23(a) requires that the Named Plaintiff's claims be "typical" of the proposed class. The Third Circuit outlined the proper considerations for assessing the typicality requirement:

> a. the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;
>
> b. the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and
>
> c. the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Courts have recognized that "the concepts of commonality and typicality are broadly defined and tend to merge." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (citations omitted). Importantly, the typicality requirement "does not mandate that all putative class members share identical claims," and "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to claims of the class members, and if it is based on the same legal theory." *Id*.

In this case, the Named Plaintiff's claims are typical of the claims of the members of the putative class. Mainly, the Named Plaintiff and the putative class members (1) were employed by Defendants; (2) were paid on an hourly basis; (3) were not paid overtime when they worked over 40 hours in a week; and (4) were not paid at the proper prevailing wage rate for the hours worked on publicly funded jobs. Named Plaintiff, like all putative class members, is seeking the exact same relief pursuant to a singular cause of action: allegedly unpaid overtime and prevailing wage rate compensation.

Accordingly, the claims of the Named Plaintiff and all other members of the putative class arise

from the same alleged conduct of Defendants and are based on the same legal theory – that Defendants purportedly breached their statutory wage obligations. Typicality is present.

### 5. The Named Plaintiff Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the Named Plaintiff be in a position to adequately protect the interests of the members of the class. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified, and (2) whether any conflict or antagonistic interests exist between the Named Plaintiff and the class members. *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239, 247 (3d Cir. 1975).

Here, the Plaintiffs are represented by counsel who are very experienced in class actions, labor and employment law, and wage cases in particular, and have demonstrated they are qualified, experienced and able to conduct the proposed litigation class members in cases such as this one. In fact, Plaintiffs' counsel has represented classes that were certified in cases similar to this in both state and federal courts. These cases include *Bulba v. Tunstall Holdings, LLC, et.al.,* 14-00746 (E.D.N.Y., May 26,2015); *Davis, et al. v. Essex County,* 14-cv-01122 (CCC)(JNC) (N.J. December 1, 2015)*; Scales v. We R Wireless*, Inc., et.al., 14-cv-03322 (D.N.J., November 2, 2016); *Cirillo v. Patriot Electric Corp.*, 15-cv-03770 (E.D.N.Y., May 17, 2016); *Hebert, et.al. v. Atlantic County*, 13-cv-04170 (D.N.J., December 7, 2015); *Cabrera v. Penn-Del Baking Distributors, Inc.*, et.al., 13- cv-4805 (D.N.J., May 26, 2015); *Cruz v. Majestic Cleaning,* Index No. 511791/2017 (NYSCEF, Kings County)*; Perez v. Ames Goldsmith* MID-L-005291-17 (NJ Super. Law Div. 2018)*; Rodriguez v. Parade Management Corp, et al.,* 19-cv-00223 (ES)(SCM)(D.NJ December 7, 2020). *Friscia v. Doherty Enterprises, Inc., d/b/a Panera Bread Company*, Index No. 16-cv-3754 (D.N.J. Jun. 26, 2018); and *Siyam v. SS&C,* 19-cv-18535 (MAS) (DEA).

In the present case, Named Plaintiff wishes to represent his fellow co-workers in a collective attempt to receive wages allegedly owed to them for the hours of work that they performed for

Defendants, and shares that common interest with the putative class. Therefore, there is no basis to question the adequacy of representation in this matter.

### 6.    A Class Action is Superior to Other Available Methods

Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." In addition, Rule 23(b)(3) requires for Courts to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action." Fed.

R. P. 23(b)(3). Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . ." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

In the instant matter, the class action device is superior to any other method for the fair and efficient adjudication of the issues before this Court. Given the expense of litigation and the relatively small size of the numerous individual claims, many workers would be unable to pursue redress for their claims absent class certification. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Accordingly, a class action is not only superior but, indeed, the only practical method of adjudication for obtaining relief for the members of the class.

Here, resolving the common issues on a class-wide basis will create uniform resolution of the issues under state and federal law, and achieve judicial economy, convenience, and fairness to all parties. Accordingly, Plaintiffs' New Jersey Wage and Hour Law claims associated with this action should be certified as a class action for settlement purposes only pursuant to Rule 23.

### B.    The FLSA Collective Should be Certified for Settlement Purposes

This case is also appropriate for certification for settlement purposes under the FLSA, which

provides that an action may be maintained by an employee or employees on behalf of others who are "similarly situated." 29 U.S.C. § 216(b).  Satisfying the more stringent requirements of Rule 23 qualifies the class to be certified as a collective action.  *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167 n.68 (E.D. Pa. 2011).  Courts in the Third Circuit apply the so-called *Lusardi* factors to certification of an FLSA opt-in class.  These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *48 (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988)).  "Because the analysis required for final certification largely overlaps with the class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing" as "there is little difference between the two approaches."  *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *49 (internal quotation marks and brackets omitted).

Plaintiffs contend that they have met the "similarly situated" requirement for conditional certification of a class pursuant to the FLSA. As stated earlier, Named Plaintiff and the putative class members (1) were employed by Defendants; (2) were paid on an hourly basis; (3) were not paid overtime when they worked over forty (40) hours in a week; and (4) were not paid at the proper prevailing wage rate for the hours worked on publicly funded jobs.  Named Plaintiff, like all putative class members, is seeking the exact same relief pursuant to a singular cause of action: allegedly unpaid overtime and prevailing wage rate compensation.

Plaintiffs further contend that the conduct of Defendants being challenged in the action is common to all the class members and not based on "disparate factual and employment settings," nor subject to defenses that "appear to be individual to each plaintiff."  Furthermore, the procedural and fairness considerations will be satisfied through due process considerations set forth in the Settlement

Release; the putative collective members will receive notice of the settlement, which will include, among other things, an explanation of how the settlement funds will be distributed, notification that the collective members can opt out of the settlement and that the collective members can object to the settlement. Thus, as the *Lusardi* factors are met, the FLSA collective should be certified for settlement purposes.

### C.    Applicable Case Law Supports The Conclusion That This Collective And Class Action Should Be Certified for Settlement Purposes Only

There are numerous other examples of collective actions and class action status being granted in cases seeking recovery of allegedly unpaid or underpaid wages.  *See e.g.*, *Deangelis v. Bally's Park Place, Inc.*, 298 F.R.D. 188, 191 (D.N.J. 2014) (court certified class action brought on behalf of casino dealers who were not paid for their attendance at meetings required by the employer); *Singleton v. First Student Mgmt.* LLC, 2014 U.S. Dist. LEXIS 108427, at *2 (D.N.J. 2014) (court certified class of drivers and aides pursuant to Rule 23); *Goldman v. Radioshack Corp.*, 2005 U.S. Dist. LEXIS 8742, at *1 (E.D. Pa. 2005) (court certified class pursuant to Rule 23 to workers who claimed they were not paid overtime compensation); *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. 2010); *Velez v. Majik Cleaning Service, Inc.*, 2005 WL 106895 (S.D.N.Y. 2005) (court granted class certification pursuant to Rule 23 to past and present employees of defendant who performed residential and commercial cleaning services); *see also Grenawalt v. AT&T Mobility, LLC*, 2014 U.S. Dist. LEXIS 139179, at *12 (S.D.N.Y. 2014); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999); *Barone v. Safway Steel Prods., Inc.*, 2005 U.S. Dist. LEXIS 17645, at *14 (E.D.N.Y. 2005).

In light of the numerous courts that have granted class certification in actions similar to the case at bar, and because Plaintiffs contend that they have met the requirements of Rule 23, this Court should grant class certification of this action for settlement purposes only.

### IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir.2010) (noting the strong judicial policy in favor of settlements, particularly in the class action context) (internal quotation marks and citation omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); NEWBERG § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of the court's discretion. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Lucent Technologies*, *Inc.*, *Sec. Litig.*, 307 F. Supp. 2d 633, 641-42 (D.N.J. 2004) (noting that courts enjoy considerable discretion in evaluating and approving proposed settlements). "[Courts] . . . owe[] deference to a settlement as the negotiated agreement of private parties. *Martina* v. *L.A. Fitness Int'l, Inc.*, 2013 U.S. Dist. LEXIS 145285 (D.N.J. Oct. 8, 2013). Furthermore, as the Third Circuit has explained, "[s]ettlements are private contracts reflecting negotiated compromises. The role of a [court] is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) (citation omitted).

Preliminary approval requires only a "preliminary evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Bernhard v. TD Bank*, *N.A.*, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009). Preliminary approval is not binding and should be granted unless a proposed settlement is obviously deficient. *Mazon v. Wells Fargo Bank*, *N.A.*, No. CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011); *see Smith v. Prof'l Billing & Mgmt. Servs.*, 2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007)

(noting that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason") (internal quotation marks and citation omitted). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A.    The Settlement is Non-Collusive, Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Third Circuit generally consider the nine factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)) ("*Girsh*").

Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," NEWBERG § 11.25, to determine whether the settlement falls within "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Girsh* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157.

Similarly, "[t]o approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50 (citing *Lynn's Food Stores, Inc.* v. *United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The bona fide dispute requirement is satisfied by a disagreement over the compensation due that

is vigorously litigated. *See id*. If the proposed settlement reflects a "reasonable compromise of disputed issues," the court should approve the settlement. *Lynn's*, 679 F.2d at 1354; *accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52. In evaluating whether an FLSA settlement is fair and reasonable to employees, courts in the Third Circuit apply the same *Girsh* factors used to determine the fairness of a Rule 23 class action settlement. *Clarke* v. *Flik International Corp.*, 2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020). All of the *Girsh* factors weigh in favor of approval of the Settlement, and certainly in favor of preliminary approval.

### 1.    Litigation Through Trial Would Be Complex, Costly, and Long (*Girsh* Factor 1)

By reaching a favorable settlement prior to extensive motion practice on collective and class certification, extensive formal discovery, and dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *Ehrheart*, 609 F.3d at 595. This case is no exception, with 54 Class Members, and claims under federal and state law.

Further litigation here would cause additional expense and delay. Plaintiffs would likely file a Declaration for the additional opt-in Plaintiff, and perhaps move to Amend his Motion to Conditionally Certify a Class, which would require extensive briefing by the parties, and, if granted, Plaintiffs would follow with a Motion for Class Certification, to which Defendants would likely file a motion to decertify the collective action. In addition, after extensive additional formal written discovery and depositions, the Parties likely would file cross-motions for summary judgment. If the Court were to deny the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Girsh* factor

weighs in favor of approval.

### 2.    The Reaction of the Class Has Been Positive (*Girsh* Factor 2)

Notice of the settlement and its details have not yet been issued to the Class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt-out or object.  At this early stage in the process, the Named Plaintiff and other FLSA opt-in collective members have expressed approval of the settlement.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Girsh* Factor 3)

The Parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.

The Parties' discovery here meets this standard.  Plaintiffs' Counsel conducted an investigation and research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages.  They also researched Defendants' likely affirmative defenses.  After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, interviewing and obtaining declarations from Plaintiff and Class Members, participating in lengthy discovery, an analysis of all interviews and data and reconciling over 6000 pages of documents in preparation for settlement discussions and an eventual mediation.  This factor favors preliminary approval. *See Weber v. Gov't Employees Ins. Co.*, 262 F.R.D. 431, 438 (D.N.J. 2009) (finding that "[b]ased upon the discovery and review and pretrial preparation, Class Counsel was able to evaluate the substantial time and expense that would be required to prosecute the case further and realized that appeals would be likely even in the event of a successful resolution of any claims—individual or class"); *see also Dorn v. Eddington Sec.*, *Inc*., No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims").

#### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Girsh* Factors 4 And 5)

Although Plaintiffs' Counsel believe their case is strong, it is subject to considerable risk; there is still the chance that the Court could rule against Plaintiffs' Motion for Conditional Certification of a Class pursuant to the FLSA, as well as a subsequent Motion for a Rule 23 Class. Further, there is risk that Plaintiffs may fail after the completion of discovery on a motion for decertification or summary judgment, or at trial on the merits.

A trial on the merits would involve risks to both parties. To the extent a class is certified under Rule 23, the class will be comprised of present and former employees, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiffs would have to overcome Defendants' legal and factual defenses. Defendants assert that class members were appropriately paid, and most if not all, of the Plaintiffs worked less hours than claimed on both private and public jobs.

While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, this would require further significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

#### 5. Risks Involved in Maintaining the Class Through Trial (*Girsh* Factor 6)

Defendants would most likely oppose Plaintiffs' application for Rule 23 class certification of the New Jersey Labor Law claims on the grounds that Plaintiffs' individualized circumstances were so varied that class certification would prove impractical. Moreover, even if Plaintiffs were to succeed on the Rule 23 motion, Defendants would likely seek appeal of the Court's determination. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

#### 6. Defendants' Ability to Withstand A Greater Judgment is Not Determinative (*Girsh* Factor 7)

23

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014). In the instant matter, throughout the pendency of this action, Defendants have contended that settlement would be difficult because of their uncertain future revenues due to COVID. Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7. **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Girsh* Factors 8 And 9)**

Defendants have agreed to settle this case for a substantial sum. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs prevailed on a motion to certify the class, succeeded on all claims at trial, and survived an appeal. The determination of whether a settlement amount is reasonable "require[s] the court to consider whether proposed settlement falls within range of reasonableness in light of best possible recovery and attendant risks posed by litigation[.]" *Weber*, 262 F.R.D. at 446. "The settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be decided at trial." *See Lenahan v. Sears*, *Roebuck & Co.*, No. CIV. 02-0045, 2006 WL 2085282, at *16 (D.N.J. July 24, 2006) *aff'd*, 266 F. App'x 114 (3d Cir. 2008). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Id.* at *16 (approving a $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial); *see also Singleton*, 2014 WL 3865853, at *7 (approving a settlement of 40% of the estimated best possible outcome of the class action).

Here, the settlement provides much more than "a fraction of the potential recovery." Indeed, the

amounts to be paid under the settlement realistically reflect a significant portion of the purported damages alleged by the Class. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Girsh* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval," the Court should grant preliminary approval. *Mazon*, 2011 WL 6257149, at *1.

## V. APPROVAL OF THE NOTICE AND CLAIM FORM IS APPROPRIATE

Pursuant to Rule 23(e), the Court must direct reasonable notice to all class members who would be bound by a proposed settlement. Courts have broad discretion to approve the specific form and content of the notice provided the notice meets the requirements of constitutional due process. *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 180 (3d Cir. 2013). To satisfy these requirements, the notice "need only be reasonably calculated" to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *In re Prudential Ins. Co. Am. Sales Practices Litig.,* 962 F. Supp. 450, 527 (D.N.J. 1997) ("*Prudential* I") (citing *Mullane v. Central Hanover Bank* & *Trust Co.,* 339 U.S. 306 (1950)). Courts in this District have approved Rule 23(e) settlement notices where they inform class members (1) of the nature of the litigation, (2) of the settlement's general terms, (3) that complete information is available from court files, and (4) that any class member may appear and be heard at the final fairness hearing *Prudential I,* 962 F. Supp. 2d at 527; *Mazon v. Wells Fargo Bank, N.A.,* No. 10-700 (RBK./KMW), 2011 WL 6257149, at *3 (D.N.J. Dec. 14, 2011). The notice to the class should be written in simple "readily understandable" terms. *Varacallo,*v. Mass. Mut. Life Ins. Co. 226 F.R.D 207 (2009).

The proposed Notice Packet in the instant case satisfies the requisite legal elements. First, it explains the nature of the pending litigation. Second, the Notice Packet apprises Settlement Class members of the pendency of settlement and informs them about the material settlement terms, and how payments are calculated and distributed. The Notice informs class members of the method in which their damages are calculated. Thereby, each putative class member understands the potential amount of their recovery. The Opt-In Claim Form also provides the relevant deadlines and, along with the Notice, the consequences for failing to submit a proper Opt-In Claim Form.

The proposed manner of notice and the timetable for further proceedings are also. reasonable. This Notice Packet will be by first-class mail to the last known address of each class member. Notice Packets that are returned as undeliverable will be re-mailed using available address databases as well as a skip trace investigative tool.Members of the class will have a reasonable amount of time to file their Opt-In Claim Forms. More specifically, the Parties advise the Court that the proposed Settlement provides for an Opt-In period of Sixty (60) days from the date the Notice Packet is mailed.

## VI. THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice of Class and Collective Action Settlement ("Notice Packet") annexed to the Settlement Release as Exhibit A complies with due process and Fed. R. Civ. P. 23. [T]he best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language (in both English and Spanish):

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).
Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice Packet satisfies each of these requirements.  The Notice Packet also describes the terms of the settlement and informs the class about the allocation of attorneys' fees. Courts have approved class notices even when they provided only general information about a settlement. *See Larson v. Sprint Nextel Corp.*, No. 07-5325JLL, 2009 WL 1228443, at *14 (D.N.J. Apr. 30, 2009) (class notice "need only describe the terms of the settlement generally") (internal quotation marks and citation omitted).  The detailed information in the Notice Packet far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Release provides that the Notice Packet will be mailed by the Claims Administrator to the last known address of each Class Member within fourteen (14) days of the entry of the Preliminary Approval Order by the Court.  The Claims Administrator will take reasonable steps, including the performance of one skip trace and use of available databased, to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing. As discussed above, the Notice contains information about how to exclude oneself or object to the settlement.  Class Members will have until the end of the Claim Period—sixty (60) days from the date of mailing—to submit an Opt-In Claim Form, or to object to the settlement. [1]

## VII.    A FINAL HEARING SHOULD BE SCHEDULED

The Court should schedule a final approval hearing to determine whether final approval of the Settlement is proper.  The final approval hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including fairness, adequacy, and reasonableness of the

---

[1] [1] Except for Class Members whose Notice Packages were re-mailed, in which case those Class Members have the longer of forty-five (45) days from mailing or twenty (20) days after the re-mailing.

Settlement.

At that time, Class Counsel will present their application for their fees pursuant to Rule 23(h) as well as for the proposed Service Payments to the Class Representatives. Accordingly, Plaintiffs request that the Court schedule the final approval hearing expeditiously after the end of the Claim Period, as required by 28 U.S.C. 1715(d).

## CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order (1) granting preliminary approval of the Settlement, (2) certifying the settlement class/collective for settlement purposes only pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), and (3) approving the Notice of Proposed Class Action Settlement and Opt-In Claim Form.